JUDGE CROTTY

13 CIV 1493

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Paulette Cameron §
    Plaintiff §
v. § Case No.: _____
LR Credit 22, LLC §
Mel S. Harris and Associates, LLC §
Mel S. Harris §
Rachel Hisler §
John Does # 1 – 10
    Defendants

RECEIVED MAR 05 2013 U.S.D.C.

**ORIGINAL COMPLAINT AND JURY DEMAND**

Plaintiff Paulette Cameron brings suit against Defendant debt collectors for their

systematical filing and litigating time-barred lawsuits against Plaintiff and thousands of others in

New York, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., New

York General Business Law § 349 et seq., and New York Judiciary Law § 487 et seq., and in

support alleges as follows.

## A.    JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit because the action arises

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"). Jurisdiction

of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of

federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and

2202. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law

claims because said claims are so related to the claims within the Court's original jurisdiction

that they form part of the same case or controversy under Article III of the United States

Constitution.

2.    Venue in this District is proper because all or a substantial part of the events or omissions

giving rise to their claims occurred in Bronx County, New York.

1

3.      Plaintiff Paulette Cameron is an individual who resides in Bronx County, New York.

4.      Defendant LR CREDIT 22, LLC is a corporation organized under the laws of the State of New York, with its principal place of business at 315 Park Ave. South, 20th Floor, New York, NY 10010. It may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

5.      Defendant MEL S. HARRIS AND ASSOCIATES, LLC is a limited liability corporation organized under the laws of the State of New York, with its principal place of business at 5 Hanover Square, 8th Floor, New York, NY 10004. It may be served by and through the New York Secretary of State, One Commerce Plaza, 99 Washington Avenue, Albany, NY 12231.

6.      Defendant Mel S. Harris is an individual who, on information and belief, resides in the State of New York. He may be served at his place of employment, MEL S. HARRIS AND ASSOCIATES, LLC, 5 Hanover Square, 8th Floor, New York, NY 10004, or wherever he may be found.

7.      Defendant Rachel Hisler is an individual who, on information and belief, resides in the State of New York. She may be served at her place of employment, MEL S. HARRIS AND ASSOCIATES, LLC, 5 Hanover Square, 8th Floor, New York, NY 10004, or wherever she may be found.

**B.     STATEMENT OF FACTS**

8.      Defendant LR Credit 22, LLC ("LRC") is a debt collector that purchases charged off consumer debts for pennies on the dollar and files lawsuits to collect those alleged debts.

9.      There are currently twenty four LRC entities, numbered LR Credit # 1 - 23 operating in New York State (plus an unnumbered LR Credit), according to the New York Secretary of State

Last saved 3/5/2013 12:58 PM

("LRC Entities").

10.     The LRC Entities are wholly-owned subsidiaries of the same publically traded corporation, Leucadia National Corporation.

11.     Each of the LRC Entities purchases for pennies on the dollars putative consumer debts after they are charged off with the alleged original creditor.

12.     On information and belief, the reason the LRC Entities create separate corporate debt collection vehicles is to create thinly capitalized corporations to protect their assets when they are sued for violating the FDCPA, and to minimize their exposure for the same.[1]

13.     The LRC Entities exclusively use Mel S. Harris and Associates, LLC ("MSH") to collect the putative debts.

14.     MSH collects these putative debts by filing tens of thousands of collection suits in the name of the LRC Entities, sending out hundreds of thousands of collection letters, and by making hundreds of thousands of collection telephone calls.

15.     A large number of the collection lawsuits go out under the (putative) personal signature of attorney Mel S. Harris ("Harris").

16.     On April 4, 2012, LRC, by and through its agent MSH, filed a collections lawsuit against now-Plaintiff Paulette Cameron in Index Number CV-006345-12/BX, LR *Credit 22, LLC v. Paulette Cameron*, New York Civil Court.

17.     Harris personally signed the collections lawsuit (back)-dated March 6, 2012, or at least

---

1 For example, statutory damages for FDCPA class actions are limited to the lesser of $500,000 or one percent of the debt collector's net worth.  15 U.S.C. § 1692k(a)(2)(B).

Last saved 3/5/2013 12:58 PM

that representation was made as his signature was affixed to the complaint.

18.     According to the affidavit of service, the complaint was served on Plaintiff Paulette Cameron on or about April 17, 2012,[2] and mailed shortly thereafter on or about April 20, 2012.

19.     On May 21, 2012 Plaintiff Paulette Cameron filed a *pro se* answer to the collections lawsuit.

20.     Plaintiff was given a return date of June 18, 2012.

21.     At the day of the hearing, attorney Rachel Hisler appeared for LRC and MSH and spoke with Plaintiff. Hisler concealed from Cameron, acting *pro se*, that the suit that they filed against her was time-barred. Hisler fraudulently induced Cameron into making payments on the time barred debt, backed with a threat of entering judgment for the full amount of the time barred debt should Cameron miss payments.

22.     On information and belief, it is the pattern and practice of MSH and LRC to use attorneys like Hisler to fraudulently induce payments on debts they know are time-barred.

23.     The complaint sought to collect an alleged credit card debt where Chase Bank USA, NA ("Chase") was the original creditor.

---

2 The affidavit of service states that service was made by serving a "John Doe" "co-occupant" who was a female between the ages of 18-24 and who allegedly told the process server that the address was the "intended recipient's place of residence within the State of New York." This is false. Plaintiff lives with her 24 year old son. There is no one at Plaintiff's residence fitting the description given in the affidavit of service. It is part of the pattern and practice of MSH, LRC, and the LRC Entities to file false affidavits of service. In his order granting class certification in an FDCPA class action lawsuit against MSH and the LRC Entities, Judge Denny Chin found that the very records of MSH and the LRC Entities demonstrated their widespread use of false affidavits of service. Sykes v. Mel Harris & Associates, LLC, 2012 WL 3834802 at * 2, 3. (S.D.N.Y. Sept. 4, 2012) ("Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. Records maintained by defendants *reveal hundreds of instances of the same process server executing service at two or more locations at the same time…*These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.") (emphasis added).

Last saved 3/5/2013 12:58 PM

24.     The complaint sought interest from December 17, 2008.

25.     On information and belief, December 17, 2008 is either thirty days after the date of last payment on the putative account or the date of charge off with the putative original creditor. [3]

26.     The debt collection lawsuit is time barred because it was filed more than three years after the accrual of the cause of action.

27.     Under New York's "borrowing statute," CPLR 202, when a nonresident sues in New York on a cause of action accruing outside New York, the action "cannot be commenced" unless the action is within the statute of limitations of both New York and the jurisdiction where the cause of action accrued.  Portfolio Recovery Assoc., LLC v. King, 927 N.E.2d 1059, 1061-62 (N.Y. 2010), citing to Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 528 (1999).

28.     As a purported creditor contends it suffered an economic harm for a breach of an alleged credit card agreement, the creditor's cause of action "accrues where the plaintiff resides and sustains the economic impact of the loss." Id. (internal quotes omitted).

29.     Chase has its main office, as set forth in its articles of association,[4] in Delaware, and has its principal place of business in Delaware. This has been true from the date of the alleged default of the account to present.  Indeed this has been true since at least February 2001.

30.     Therefore, Chase's cause of action for breach of a credit contract accrued in Delaware.

31.     Further, the statute of limitations for breach of a credit contract is three years under

---

3  A charge-off occurs when a creditor moves a debt from profit to loss on its balance sheet, typically 180 days after the account becomes delinquent. See, e.g., Fed. Fin. Institutions Examination Council, Uniform Retail Credit Classification and Account Management Policy, 64 Fed. Reg. 6,655 at 6,656 (Noting that commentators representing the credit card industry stated they charged off open-ended credit accounts 180 days after delinquency.)

4  Corporations have articles of incorporation and a state of incorporation. National banks do not. Instead, national banks designate a state for its "main office" in their "articles of association."

Last saved 3/5/2013 12:58 PM

Delaware state law, Del. Code Ann., Tit. 10, § 8106; <u>King</u> at 1060.

32.     Now-Defendants were required to file and serve the collection suit within the same time period as the putative original creditor because LRC, as the putative assignee, cannot stand in better shoes than the putative assignor.  <u>King</u> at 1016.

33.     By filing and serving the collection lawsuit, Defendants represented to Plaintiff Paulette Cameron and the Court that the debt they were collecting upon was not time barred when in fact it was.  Defendants misrepresented that the debts they seek to collect are not time barred for the purposed of deceiving Plaintiff Paulette Cameron and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the civil court that now-Defendants were entitled to judgment and costs of court when they were not.

34.     While the FDCPA is a strict liability statute, Defendants actually knew that Chase has its main office, as set forth in its articles of association, in Delaware, and has its principal place of business in Delaware.

35.     It is the pattern and practice of MSH, Harris, LCR, and the other LCR Entities to file thousands of time barred collection lawsuits, where the putative original creditor is Chase and the cause of action accrued more than three years from the date they filed and served the

6                                 Last saved 3/5/2013 12:58 PM

collection lawsuit.[5]

36.     MSH, Harris, LRC, and the LRC entities file known time-barred debts because they know 99 % of the consumers are not represented by attorneys, and two thirds of the cases result in default. "There were 241,195 debt collection lawsuits filed in New York in 2009, where 99% of the debtors were not represented by counsel, and where 66% of these cases resulted in defaults." Diaz v. Portfolio Recovery Associates, LLC, 2012 WL 661456 at * 8 (E.D.N.Y. Feb. 28, 2012) report and recommendation adopted, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

37.     Plaintiff Paulette Cameron is precisely the type of vulnerable consumer the FDCPA was designed to protect.  In the time leading up to the filing and serving of the time-barred lawsuit, Plaintiff's life had been turned upside down due to a life-threatening illness, leaving Plaintiff particularly vulnerable to the harm inflicted by now-Defendants.  As a result of her illness, Plaintiff underwent 3 surgeries between August 2009 and September 2009.  She became unemployed, fell behind on her bills, and went on food stamps and public assistance to make ends meet.  It was during this fragile time in her life, from which she was just recovering, that now-Defendants began to collect the time barred debt.  This particularly inflicted damages on Ms. Cameron as she was in an especially vulnerable state. Ms. Cameron was still in physical pain and discomfort from her surgeries, which were exacerbated by the stress and fear additionally imposed on her by Defendants. The actions of Defendants contributed to her

---

5 While it did not happen in the case at bar, the majority of these time-barred Chase account lawsuits result in a default judgment against the consumer. In their applications for default, it is the pattern and practice of MSH, Harris, LCR, and the other LCR Entities to file a false affidavit of facts affirmatively misstating a key fact to the civil court clerk and the civil court judge: that Chase has its principal place of business in New York, when in fact it is in Delaware. Based on this false representation of fact, MSH, Harris, LCR, and the other LCR Entities further represent to the civil court clerk and to the civil court judge that the cause of action accrued in the State of New York, that the cause of action was governed by New York's 6 year statute of limitations, and thus that the debt was not time barred. Based on these false representations to the civil court clerk and civil court judge, MSH, Harris, LCR, and the other LCR Entities obtain hundreds of default judgments on Chase accounts that are in fact time-barred, i.e. where the cause of action accrued more than 3 years from the filing of the collection lawsuit.

Last saved 3/5/2013 12:58 PM

headaches, muscle aches, and loss of appetite she has experienced. She has been unable to sleep, thinking about the lawsuit Defendants filed against her, and how she was going to pay. In addition, Plaintiff's post-surgical injuries were also exacerbated by her physical trips to the courthouse to deal with the underlying debt collection lawsuit. To this day, Plaintiff struggles to get back on her feet and function normally at home and at work. She has lost weight and distanced herself from friends and family, due to feelings of helplessness caused by Defendants. Plaintiff also suffered damages in the form of the time lost and the expenses incurred in having to defend against a lawsuit that Defendants had no legal right to file or serve in the first place.

### C. COUNT # 1: Violations of the Fair Debt Collection Practices Act.

38.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

39.    The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also Hamilton v. United Healthcare of La., Inc., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

40.    Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been

subject to debt collection abuses will be enforcing compliance"); and <u>Jacobson v. Healthcare Fin.</u> <u>Servs.</u>, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

41.     The obligation LRC, MSH, and Harris allege to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

42.     Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

43.     Defendants are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) because their principal purpose is the collection of debts and/or they regularly attempt to collect debts, directly or indirectly.

44.     MSH is debt collector because it files tens of thousands of collection lawsuits, sends tens of thousands of collection lawsuits, and makes tens of thousands of calls seeking to collect debts.

45.     Harris is a debt collector because he (purportedly) signs thousands of collection lawsuit pleadings, and (purportedly) litigates thousands of collection lawsuits.  Harris is also a debt collector because, on information and belief, he supervises, directs, and manages the debt collection litigation apparatus for MSH.

46.     Rachel Hisler is a debt collector because, on information and belief, she regularly attempts to collect debts from consumers by litigating debt collection lawsuits, and speaks with hundreds consumers in and out of court seeking to obtain payment from them on putative debts.

Last saved 3/5/2013 12:58 PM

47.     LRC is a "debt collector" because it purchases thousands of alleged consumer debts after they are in default with the putative original creditor.  LRC regularly attempts to collect these debts, directly or indirectly, through (and exclusively through) MSH, and it is LRC's principle purpose to do so.  MSH collects these debt for LRC by filing thousands of collection lawsuits, sending thousands of collection letters, and making thousands of collection phone calls.

48.     John Does # 1 - 10 are persons, currently unknown to Plaintiff, who made the decisions to take the actions that form the basis of this complaint, who made the decision to file and to continue collection lawsuits for time barred debts, who developed the debt collection operations and policies of MSH, LRC or the servicers of LRC, and who exercised control over the operation and management of the collection activities of the same.

49.     The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

50.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692d, 1692e, and 1692f.  By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to

10

any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

**D.    Count # 2: New York General Business Law Section 349 _et seq._**

51.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

52.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state."

53.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h).

54.    As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 _et seq._ by using deceptive acts and practices in the conduct of their businesses.  This includes threatening, filing, prosecuting, maintaining, and seeking judgment in thousands of lawsuits seeking to collect time barred debts; and seeking post-judgment collections on the same.

55.    Defendants made implied and express misrepresentations that the debts they seek to collect are not time-barred for the purpose of deceiving Plaintiff and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in

Last saved 3/5/2013 12:58 PM

court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the court that now-Defendants were entitled to judgment and costs of court, when they were not.

56.     Defendants' conduct has a broad impact on consumers at large.  Defendants' conduct impacts the thousands of consumers in the state of New York who have had time barred collection lawsuits threatened, filed, maintained, or prosecuted against them.

57.     Defendants committed the above described acts willfully and/or knowingly.

58.     Defendants' wrongful and deceptive acts have caused injury and damages to Plaintiff and unless enjoined will cause further irreparable injury.

59.     As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq.*, Plaintiff has suffered compensable harm and is entitled to preliminary and permanent injunctive relief, as to recover actual and treble damages, costs and attorney's fees.

**E.     COUNT # 3, New York Judiciary Law § 487 (as to MSH, Harris, and Hisler only)**

60.     New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

61.     MSH, Harris, and Hisler violated § 487 in their systematic misrepresentations to the courts and to consumers.  MSH, Harris, and Hisler represented that the debts they were collecting upon were not time barred when in fact they were time barred; and they fraudulently induce consumers

Last saved 3/5/2013 12:58 PM

such as Ms. Cameron to make payments on time-barred debts.

62.     MSH, Harris, and Hisler made these misrepresentations that the debts they seek to collect are not time-barred for the purposed of deceiving Plaintiff and other consumers (least sophisticated or otherwise) into believing they had no basis on limitations grounds to challenge the collection lawsuits; that any attempt to challenge the collection lawsuits on limitations grounds would be futile; and therefore that the consumers should not challenge these suits in court but instead had no choice to pay what was demanded under the (illegal) threat of judgment and court costs on time barred debts. Likewise, the purpose of these misrepresentations was to deceive the court that now-Defendants were entitled to judgment and costs of court, when they were not.

63.     The violations of § 487 by MSH, Harris, and Hisler inflicted damages, for the reasons and in the manner previously indicated.

64.     Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by MSH, Harris, and Hisler, and Plaintiff so seeks.

## F.     JURY DEMAND.

65.     Plaintiff demands a trial by jury.

## G.     PRAYER

66.     WHEREFORE, Plaintiff requests the following relief:

a.   A declaration that all Defendants have committed the violations of law alleged in this action;

b.   An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

c.   Statutory damages under 15 U.S.C. § 1692k and G.B.L. § 349(h);

13

d.   Civil penalties under G.B.L. § 349 against all Defendants

e.   Civil penalties under Judiciary Law § 487 against Defendant MSH, Harris, and Hisler.

f.   Treble damages under G.B.L. § 349 against all Defendants;

g.   Treble damages under Judiciary Law § 487 Defendant MSH, Harris, and Hisler;

h.   An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, and G.B.L. § 349 against all Defendants;

i.   An order awarding disbursements, costs, and attorneys' fees under Judiciary Law § 487 against all Defendants;

j.   A judgment for actual, statutory, and treble damages;

k.   Prejudgment and post judgment interest as allowed by law;

l.   All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        March 5, 2013

                                Respectfully submitted,

                                Ahmad Keshavarz
                                One of Plaintiff's Attorneys
                                The Law Office of Ahmad Keshavarz
                                16 Court St., 26th Floor
                                Brooklyn, NY 11241-1026
                                Phone: (718) 522-7900
                                Fax:    (877) 496-7809
                                Email: ahmad@NewYorkConsumerAttorney.com


                                Harvey Epstein, Esq.
                                URBAN JUSTICE CENTER
                                14                      Last saved 3/5/2013 12:58 PM

BY: _____

Nasoan Sheftel-Gomes, of counsel
123 William Street, 16th Floor
New York, NY 10038
Phone: (646) 459-3013 Fax: (212) 533-4598
E-mail: nsheftel-gomes@urbanjustice.org

15